KLIEBERT, Judge.
On January 14, 1982, the trial judge rendered judgments on various unspecified rules pending in these consolidated proceedings. After a hearing on an application for a new trial, the original judgment was amended on March 5, 1982 to clarify some of the language. The matter is now before us on a devolutive appeal brought by Mr. Frank Orlando and answers to that appeal filed by Mrs. Antoinette Santangelo and Mr. Dominick A. Lamandre.
These succession proceedings have been pending for a long time and Mrs. Santange-lo has occupied different fiduciary relationships at different times. There was disagreement from the initial opening of the succession of Charles Orlando in 1973 to the present time. Some of the rules filed by the litigants were applicable in only one of the succession proceedings and some in both. Further, when ruled upon by the trial judge, there had been hearings over a period of several years and apparently there had been agreements as to what rules were to be heard and ruled upon between the attorneys and the court which are not now reflected by the record before us. The trial judge gave no written reasons for his judgments and did not itemize the rules being ruled upon in the judgment of January 14, 1982. There is now some disagreement between the litigants as to what rules were to be ruled upon and what rules were in fact ruled on. Adding to the confusion and complexity is a poorly assembled record.
In order to put the issues in proper perspective, it is necessary to review the man *503 ner in which they arose. The decedent, Charles Orlando, died in 1973. His wife, Josephine Barbara Orlando, died in 1977. Three children, namely, Vincent, Frank and Antoinette (now Mrs. Antoinette Santange-lo) were born of the union. The other litigant is Dominick Lamandre, the son from a previous marriage of Mrs. Santan-gelo and the grandson of the decedents, and a legatee under his grandmother’s will.
The decedent and his two sons were in business together. Initially, the business was conducted as the sole proprietorship of Charles Orlando, then as a partnership, and, afterwards, as a corporation.
Prior to the death of Charles Orlando, problems in the operation of the business caused disagreement in the family. Upon the death of Charles Orlando, Frank and Vincent were recognized and confirmed as the co-executors named in his will. Subsequently, Vincent resigned as co-executor and his mother was appointed as dative testamentary co-executrix. Initially, little, if anything, was done towards the administration of the succession of Charles Orlando, apparently due to the fact Mrs. Orlando had the usufruct over the property belonging to the succession.
When Mrs. Josephine Orlando died in 1977, Mrs. Antoinette Santangelo was recognized and confirmed as the executrix of her succession. Also, she applied for and was appointed as dative testamentary co-executrix of the succession of Charles Orlando (the position previously held by her mother). It was at this point the various attacks on previous donations and/or sales were made by rules. These attacks gave rise to the ancillary matters which were also raised by rules.
The judgments on appeal, originally rendered on January 14, 1982 and amended on March 5, 1982, are as follows:
“IT IS ORDERED:
(1) That the renunciation of Vincent Orlando is valid and is hereby recognized;
(2) That Frank C. Orlando is discharged as co-executor, with Antoinette Santangelo to remain as sole executrix, the Court being of the firm opinion that one person rather than two can better be more (sic) expeditiously direct these proceedings toward a termination;
(3) That the motion to remove Paul S. Fiasconaro as attorney for Dominick S. Lamandre is denied;
(4) That the real property sold to Dominick S. Lamandre is not subject to collation; (As amended on March 5, 1982)
(5) That the inter vivos donations of Mr. and Mrs. Charles C. Orlando to Frank C. and Vincent Orlando are valid and not subject to collation; (As amended on March 5, 1982)
(6) That Antoinette Santangelo, as executrix, can take further action with regard to the dation en paiement to John Szuch, as the Court does not believe that it has, as of this time, sufficient information regarding the legality or illegibility of the dation;
(7) That Antoinette Santangelo, as executrix, can and should take whatever further steps are necessary to conclude these proceedings without further delays; and
(8) That the request for attorney fees by Walter E. Kollin is recognized, and, accordingly, the executrix is directed to take this request into consideration before rendering a final accounting.”
In his original brief, counsel for Frank Orlando urged as error the trial judge’s (1) removal of Frank Orlando as co-executor of his father’s succession, and (2) refusal to make Dominick Lamandre collate the real property conveyed to him by the decedent, Josephine B. Orlando, by act dated January 8, 1976. In a supplemental brief, counsel for Frank Orlando additionally assigned as error the trial judge’s (1) refusal to order the removal of Mrs. Antoinette Santangelo as executrix of the succession of Mrs. Josephine B. Orlando, and (2) refusal to order Dominick Lamandre to collate the real estate bequeathed to him by the decedent, Josephine B. Orlando, in her will. We do not consider the latter assignments of error listed by Frank Orlando in his supplemental brief because there is nothing in the *504 judgment of January 14, 1982, as amended by the judgment dated March 5, 1982, to indicate that these issues were ruled on by the trial judge.
In his answer to the appeal, Mr. Dominick Lamandre assigns as error the trial judge’s (1) refusal to have Frank Orlando collate the business and properties operated in the name of Frank B. Orlando and Sons, Inc., donated to him by the decedents (Frank and Josephine Orlando) by act dated August 12, 1965, and (2) refusal to order Frank Orlando to produce documents requested by Dominick Lamandre. We will not consider the second issue raised by counsel for Mr. Lamandre because there is no indication this was ruled on by the trial court.
In her answer to the appeal, Mrs. Antoinette Santangelo assigns as error the trial judge's (1) refusal to have Frank Orlando collate the business and properties operated in the name of Frank B. Orlando and Sons, Inc. donated to him and his brother Vincent by the decedents, Frank and Josephine Orlando, (2) refusal to declare the dation en paiement to John Szuch declared a nullity, and (3) refusal to have Frank Orlando account for the sale of movables.
We now consider the issues under the headings hereinafter indicated:
REMOVAL OF EXECUTOR
In his judgment, the trial judge said that Frank Orlando should be removed as co-executor of his father’s succession to “more expeditiously direct these proceedings toward a termination”. Counsel for Frank Orlando argues that the reason for removal given by the trial judge is not one of the reasons provided by the Civil Code for removal of a succession representative.
We note that it is well established law, an executor who qualifies under the provisions of La.C.C.P. Article 3097 cannot be removed from office except for one of the reasons stated in La.C.C.P. Article 3182 or the breach of the fiduciary duty imposed by La.C.C.P. Article 3191.
La.C.C.P. Article 3182 authorizes the court to remove a succession representative who “has failed to perform any duty imposed by law or by order of court ”. Also, La.C.C.P. Article 3191 imposes on the succession representative the duty of “collecting, preserving and managing the property of the succession in accordance with law”.
By order dated July 11, 1977, Frank Orlando was ordered to account for his administration. He never complied with the order, nor did he assist or join with the co-executrix in managing the property or in filing reports of their administration. When questioned as to why he did not perform the required functions, his answer was “Never was asked”.’ Although there is strong reluctance to undo the will of the testator by removing his designated succession representative, there is a point at which the actions of a succession representative is impeding the ultimate basis for the administration, i.e., delivery of the succession assets to the legatees and/or their heirs. The record leaves little doubt here that Frank Orlando’s refusal to perform his fiduciary duties was impeding the administration; hence, we hold the trial judge acted properly in removing Frank Orlando as co-executor of his father’s estate.
COLLATION OF DONATION TO DOMINICK LAMANDRE
By act dated January 8, 1976, Josephine Orlando, by an authentic act passed before a Notary Public, conveyed to Dominick Lamandre, her grandson, property which she had inherited from her parents and thus formed part of her separate property. The stated consideration for the sale was $35,000.00, represented by a bearer note. Subsequently, an act of correction was executed, changing the stated consideration to $45,000.00, of which $10,000.00 was said to have been paid at the time of the sale and the remaining $35,000.00 was represented by a bearer note.
Filed in evidence was an appraisal showing the property was valued at $50,650.00. The purchaser also filed as exhibits:
*505 (1) A credit sale by Josephine B. Orlando to Dominick S. Lamandre;
(2) A sale by Dominick S. Lamandre to First Homestead & Savings Association;
(3) A promissory note by Dominick S. Lamandre in the amount of $35,-000.00;
(4) An act of correction by Joseph B. Orlando and Dominick S. Lamandre dated February 17, 1976;
(5) A promissory note by Dominick S. Lamandre dated April 8, 1976, in the amount of $35,000.00;
(6) A check by Dominick S. Lamandre made payable to Josephine B. Orlando dated April 8,1976, in the amount of $10,000.00;
(7) A check by Jesse S. Guillot, attorney, made payable to the order of Josephine B. Orlando dated April 8, 1976 in the amount of $35,000.00 marked “For Lamandre # 5483”;
(8) A check by Jesse S. Guillot, attorney, made payable to the order of First Homestead & Savings Association, dated April 8, 1976 in the amount of $783.02, marked “For La-mandre # 5483”;
(9) An act of sale by First Homestead & Savings Association to Dominick S. Lamandre dated April 8, 1976; and
(10)A loan commitment and disclosure statement dated February 24, 1976.
These exhibits show the purchaser borrowed $35,000.00 from First Homestead, using the acquired property as security and paid the stated consideration to the seller. With this evidence, we cannot say the trial judge erred in concluding the transfer was a valid one and, hence, not a simulation, nor subject to collation.
COLLATION OF DONATION INTER VIVOS TO FRANK AND VINCENT ORLANDO
Charles Orlando and his two sons, Vincent and Frank, were in the construction business together. Initially the business was apparently a sole proprietorship owned by Charles Orlando, but with the passage of time, a dispute arose and the ownership became indefinite until 1963 when a partnership was formed. By Notarial act dated October 15, 1963, Charles and Josephine Orlando donated to Frank and Vincent Orlando an undivided one-third interest each in a tract of land. This tract was apparently the one from which the construction business was being conducted.
The setting up of the formal partnership agreement apparently did not cure the inter-family dispute and the business commenced having financial problems. Apparently, to provide a business operating form (corporation) and collateral satisfactory to the bank, on August 11, 1965, the donation of real estate made by act dated October 15, 1963 was revoked. On the following day, August 12, 1965, Charles and Josephine Orlando again donated to Frank and Vincent Orlando each an undivided one-third interest in the tract. The act of donation contained a declaration stating the value of the entire tract was $90,000.00 and the value of the interest donated was $60,-000.00. The act also contained a declaration that “The said Charles Orlando and Josephine Barbara Orlando, his wife, further declare that they have another child, a daughter, Mrs. Antoinette Orlando Santan-gelo, but the property herein donated by them is only a portion of the property owned by them”. Similar provisions had been contained in the October 1963 donation. It is unclear why the 1963 donation had to be revoked and a new one substituted in its place.
Following the second donation of the real estate, Charles, Frank and Vincent each sold their one-third interest in the real estate, together with their one-third interest each in the movable equipment and other assets to Charles Orlando and Sons, Inc. The act of sale showed valuations for assets as follows: (1) Real estate $20,923.24; (2) Construction equipment $81,343.21; (3) Autos and trucks $3,295.81; (4) Accounts receivable $6,094.77. The stated consideration for the sale was the corporation’s assuming and binding itself to pay $111,- *506 657.19 in indebtedness, substantially all of which was represented by notes secured by mortgage on real estate or chattel mortgages.
The daughter, Antoinette, and her son, Lamandre, attacked the donations and asked that the property be collated. The trial judge held collation was not necessary. He assigned no reasons for his conclusion.
Inter vivos donations to children may be exempt from collation if intended to be given as an extra portion. The intent to give as an extra portion, however, must be expressed in clear and unequivocable terms. Milano v. Milano, 243 So.2d 876 (La.App. 1st Cir.1971); Successions of McLellan, 159 So.2d 351 (La.App. 4th Cir.1964). Thus, the question here becomes “Did the parents intend the donation of 1965 to be an extra portion?”. The parent donors declared and acknowledged the existence ■ of the daughter, Antoinette, and stated “the properties herein donated by them is only a portion of the properties owned by them Clearly the donors’ intention was to transfer to their sons who were engaged in business with their father an undivided interest in the land so that their ownership in the jointly owned business would be equalized.
Further, although there may be some question as to whether the sons did not in fact earn the interest (apparently subject to mortgages) which was transferred to them in the form of a donation, the declaration as to the daughter makes it clear, even if not earned, their intention was to give it to their sons as an extra portion. Therefore, we cannot say the trial judge erred in concluding the property does not have to be collated.
The heirs did not raise in the lower court or here the issue of reduction because of an impingement on the legitime of the daughter. The issue of reduction hinges on the valuation of the donation here when matched against the value of each estate. Hence, the trial judge did not nor do we pass on that issue at this time.
DATION EN PAIEMENT TO JOHN SZUCH
Although not in the record, from the testimony it appears equipment either belonging or alleged to belong to the corporation, Charles Orlando and Sons, Inc., was conveyed to John Szuch by a dation en paiement executed in October 1975. The trial judge concluded there was insufficient information for him to make a determination as to the validity or invalidity of the dation. After reviewing the record, we are in no different a position from the trial judge and, hence, cannot say he erred.
CONCLUSION
The judgment of the trial court is affirmed and the succession proceedings remanded to the trial court to proceed with as directed by his judgment. Each party to bear his own cost of the appeal.
AFFIRMED AND REMANDED.